Newbold & Son Company, Appellant, *v.* McCarter.

Argued December 10, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*E. S. Richardson* of *Middleton, Blakeley and Richardson,* and with him *Larzelere and Wright,* for appellant, cited: Orth v. Board of Education, 272 Pa. 411; Nick v. Craig, 301 Pa. 50.

*Wm. F. Dannehower, Sr.,* for appellee, cited: Wright v. Gas Co., 2 Pa. Superior Ct. 219; Barnhart v. Riddle, 29 Pa. 92.

OPINION BY CUNNINGHAM, J., February 27, 1931:

This case was tried by a judge of the court below, KNIGHT, J., sitting without a jury, under the provisions of the Act of April 22, 1874, P. L. 109, and the question involved is the proper construction of the third paragraph of an agreement entered into between plaintiff and defendant under date of February 13, 1924. A recital of the undisputed facts leading up to the making of the agreement is essential to an understanding of the controversy.

The plaintiff corporation, appellant herein, manufactured certain "asphalt block presses" and the defendant, McCarter, was the owner of 235 shares of its capital stock. Prior to 1904, he invented improvements in such presses, made application for a patent and assigned his right, title and interest therein to The International Pavement Company, to which letters patent were issued. In December, 1916, The International Pavement Company filed its bill of complaint in the District Court of the United States for the State of Florida, charging that McCarter, a resident of Norristown, after having assigned the patent, entered into a conspiracy with the Newbold Company,

of the same place, Frank G. Proudfoot and Alfred G. Proudfoot, of Florida, and Samuel C. Graham, of Pittsburgh, to manufacture, sell and use presses infringing the patent and, pursuant thereto, manufactured and sold such presses. This litigation resulted in a decree, dated December 10, 1923, awarding an injunction against the Newbold Company, McCarter, the Proudfoots and the estate of Graham, enjoining them from further infringement, directing all the defendants, except the Proudfoots, to account to The International Pavement Company for profits and damages and appointing a master to ascertain the amount thereof and state and report an account.

The following February the Newbold Company and McCarter entered into an agreement in writing for the settlement of various matters in dispute between them. One of its provisions was that McCarter would discontinue certain litigation which he had instituted against the Newbold Company, another was that McCarter's stock in that company would be purchased or caused to be purchased.

The present controversy arose under the third paragraph of the agreement which reads:

"3. A certain proceeding in equity, wherein The International Pavement Company is the plaintiff and the parties hereto, of the defendants, is pending in the courts of Florida. It is a patent case. It has proceeded so far that the court has decided defendants to have infringed, issuing a restraining order and it is anticipated that a master will be appointed to estimate the damages. By reason of the existence of correspondence, it is an open question whether McCarter has agreed to indemnify the [plaintiff] corporation against any loss by reason of this litigation. With respect to this litigation, McCarter now agrees not only to aid and assist the corporation in making a satisfactory settlement of the litigation but also agrees to contribute and pay one-third of all moneys

which the said corporation shall be required by reason of this litigation to pay, or one-third of all moneys which the corporation shall pay or expend in compromise and settlement by reason of this litigation. Should any contribution toward a settlement of this litigation be made by the estate of Samuel C. Graham, who was in his lifetime a co-defendant, it shall be applied to the relief of both parties hereto in the proportions stated.''

Under date of March 23, 1927, the Newbold Company, in consideration of the payment of $2,500 to The International Pavement Company, obtained from it a release ''from all claims and demands to date arising out of the profits to said R. S. Newbold & Son Co. in connection with the manufacture, use or sale of asphalt block presses used by Lockport Paving Company at Lockport, New York, and by Frank G. Proudfoot at Tampa, Florida.'' It was further provided in said release that the pavement company would ''make no further claim for damages and/or profits against the R. S. Newbold & Son Co. on account of the manufacture, use and sale of said presses.''

At the same time the Newbold Company obtained an agreement from the pavement company that, if it should recover profits or damages from the Newbold Company's co-defendants in the infringement suit, and if there should be a claim made against the Newbold Company by any of these co-defendants ''for contribution as a joint tort feasor,'' the pavement company would repay ''such part of any amount recovered from such co-defendants as may in turn be recovered by the latter from R. S. Newbold and Son Co.''

The Newbold Company, in addition to the above mentioned $2,500, paid, in connection with the litigation over the infringement of the patent, the sum of

$430, counsel fees, making a total expenditure of $2,930.

Asserting that under the above quoted provision of its agreement with McCarter he was liable for one-third of this amount, the present action of assumpsit was instituted against him for the recovery of $976.67, with interest.

The substantial issue raised by the pleadings in this case is whether the agreement contemplated the disposition of the entire litigation through a settlement of the claim of the pavement company against all three defendants, the Newbold Company, McCarter and the Graham estate, or whether McCarter bound himself to contribute to a settlement which would terminate the liability of the Newbold Company alone. If the parties meant that appellee was to pay "one-third of all moneys which the [Newbold Company] shall pay or expend in compromise and settlement by reason of this litigation" only in the event that a settlement was secured in behalf of all three, appellant is not entitled to recover anything in this action; no such adjustment was obtained. There can be no question about the character of the settlement made by appellant with the pavement company; it was merely an adjustment of its claims and demands against appellant alone and it was understood by both parties to that settlement that the pavement company contemplated proceedings against McCarter and the Graham estate for the collection of such additional profits and damages as it might be able to recover from them. This is particularly clear from the agreement between the pavement company and appellant under which that company, in the event of such further recoveries by it, agreed to indemnify appellant if either of its co-defendants in the patent case made a claim against appellant for contribution as a joint tort feasor. The learned judge of the court below, after a careful review and analysis of the testimony, reached the conclusion that McCarter

was to be liable for the payment of the stipulated one-third only if and when the liability of each of the three parties ordered to account had been terminated, and accordingly entered judgment in his favor.

Upon this appeal by the Newbold Company from that judgment the trial judge's conclusion of law, that appellant is not entitled to recover, and the entering of the final judgment in favor of appellee are the only matters assigned for error. There is no suggestion that the findings of fact, as amended on exceptions, are not supported by the evidence. It is stated by the trial judge in his discussion that he excluded from consideration the testimony of appellee as to conversations or statements made prior to the execution of the agreement with reference to the subject matter thereof, because all preliminary understandings, conversations and statements are presumed, in the absence of proof that anything had been omitted from the contract by fraud, accident or mistake, to have been merged in the writing. But he stated further that in his opinion the writing is sufficiently ambiguous to warrant consideration of the parol evidence showing the circumstances existing, and the situation of the parties, at the time the contract was executed and relating to subsequent acts of the parties indicative of their construction of the contract. Upon a review of the entire record, we are of opinion that the conclusion reached by the trial judge is fully justified by the language of the contract, read in the light of the competent evidence. There was evidence that at the time the parties made their agreement counsel for the Newbold Company had entered into negotiations with the pavement company for a settlement of the litigation. The matter seems to have been in abeyance until the early part of 1927 when the pavement company again took the matter up with counsel for appellant and indicated an intention of proceeding for an accounting; appellant, without consulting ap-

pellee, then settled its own liability for $2,500 and obtained the release and indemnification above mentioned. There was also evidence that the gross profits of appellant from the machines sold were "something over $5,000," whereas the claim against appellee upon the same ground was only $1,500. As we read the contract, the provision of its third paragraph most decisively against the contention of appellant is this: "Should any contribution toward a settlement of this litigation be made by the estate of Samuel C. Graham, who was in his lifetime a co-defendant, it shall be applied to the relief of both parties hereto in the proportions stated."

If the parties were not arranging for a settlement in behalf of all three defendants required to account in the patent suit, why insert a provision for the division, between appellant and appellee, of any contribution "toward a settlement of this litigation" which might be made by the third defendant—the Graham estate? As stated by the court below, this provision "is natural and easily understood when viewed in the light of the construction we have placed on the paragraph; in the light of any other interpretation it becomes unreasonable, if not impossible of application."

We are also in accord with the reasoning of the court below as expressed in the following excerpt from its opinion: "McCarter agreed to pay 'one-third of all moneys the corporation shall pay or expend in compromise and settlement by reason of this litigation.' As we see it, this means money paid on compromise and settlement of the litigation, and not money paid to secure [the corporation's] release. Admittedly there was no compromise or settlement of the litigation. McCarter, represented by a careful lawyer, would hardly agree that Newbold should buy its peace at any price that it saw fit to pay and call upon McCarter to pay a third of it without consulting him,

and with no check on the amount except the finding of a judge and jury that it was reasonable. On the other hand, if we construe the agreement as contemplating a settlement of the entire litigation, it is natural to assume that McCarter would be consulted about it and there was no necessity of inserting a clause to protect him as to the amount."

It follows that none of the assignments of error can be sustained.

Judgment affirmed.